IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2011

**DUSTY B. HAYNES v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. 09-CR-31     Lee Moore, Judge**

**No. W2010-01406-CCA-R3-PC  - Filed June 3, 2011**

The petitioner, Dusty Haynes, appeals the order of the post-conviction court that denied him post-conviction relief from his guilty plea conviction for burglary but nonetheless granted him a delayed appeal of his sentence.  The petitioner argues that the post-conviction court instead should have reversed his conviction and granted him a new trial.  Following our review, we affirm the denial of post-conviction relief and reverse the granting of a delayed appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal); James E. Lanier, District Public Defender; and H. Tod Taylor, Assistant Public Defender (at hearing and on appeal), for the appellant, Dusty B. Haynes.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner was indicted by the Dyer County Grand Jury on one count of burglary, a Class D felony, and one count of theft under $500, a Class A misdemeanor, based on his having stolen approximately twelve cartons of cigarettes from the storage room of a gasoline

station. On August 12, 2009, the day that his case was set for trial, the petitioner pled guilty to the burglary count of the indictment, with the sentencing to be determined by the trial court at a later sentencing hearing. The theft count of the indictment was dismissed. The prosecutor set forth the factual basis for the plea at the guilty plea hearing:

> Your Honor, the proof would be that on December 18, 2008 officers were dispatched to Murphy Oil – that's the gas station area of Wal-Mart – here in Dyersburg due to a theft. The complainant stated that sometime around 7:30 and again at 8:00 a white male got into the storage area of the store and took 12 cartons of cigarettes. When officers viewed the video it showed a white male in his early to mid-twenties, they were estimating, come to the side door of the gas station, take three cartons of cigarettes, put them down his pants and under his jacket, and the same male came back about a half hour later with a blue bag and did fill it with cartons of cigarettes and left again. After inventory was done, employees did estimate that the value of the cigarettes taken w[as] $460.80.

> . . . Ms. Walls of Murphy Oil said that she had been advised by a person anonymously that the subject who took the cigarettes was [the petitioner,] and [the petitioner] was taken into custody. He did confess that he did take them. So he was cooperative once officers did contact him.

At the end of the September 29, 2009 sentencing hearing, the trial court noted that the enhancement factor of the defendant's previous criminal history applied to the conviction. The court also noted that the petitioner had made no attempts toward paying restitution in the case. Accordingly, the court denied the petitioner's request for judicial sentencing and sentenced him as a Range III, persistent offender to eight years in the Department of Correction, the minimum sentence in the range. No direct appeal of the sentencing was filed.

On November 17, 2009, the petitioner filed a *pro se* petition for post-conviction relief in which he raised claims of ineffective assistance of counsel and an unknowing and involuntary guilty plea. In his amended petition filed after the appointment of post-conviction counsel, he alleged that trial counsel was ineffective for, among other things, failing to advise him of the sentencing range to which he would be subjected upon his plea of guilty, thereby rendering his guilty plea unknowing and involuntary; and for failing to advise him of his right to appeal the sentencing determinations, thereby denying him of his constitutional right to appeal.

At the evidentiary hearing, the petitioner testified that he had been under the impression that he was pleading guilty to the theft under $500 count of the indictment. He

insisted that no burglary was involved in his crime and said that he would have chosen to go to trial rather than enter a guilty plea had he realized he was pleading guilty to burglary rather than theft. The petitioner acknowledged that he talked with counsel several times before he entered his plea but indicated that he felt counsel never really communicated with him about the case. He said he tried to meet with counsel on a number of occasions, but counsel would not return his phone calls and in general was difficult to reach. Counsel told him that it would be in his best interest to let the trial court sentence him upon his plea of guilty, and he took counsel at his word. Counsel, however, never told him that he was facing an eight- to twelve-year sentence at forty-five percent; instead, counsel told him that he would have to serve about one year, with perhaps six months in jail and six months in rehabilitation.

The petitioner testified that he did not see counsel after the guilty plea hearing until the day of sentencing and that the first time he had seen counsel since sentencing was the day of the post-conviction evidentiary hearing. Counsel never discussed his appellate rights and the petitioner, therefore, took it upon his own initiative to attempt to appeal his case by filing his *pro se* post-conviction petition approximately six to seven weeks following the sentencing hearing. The petitioner acknowledged that he had signed the guilty plea agreement, which listed burglary as the offense to which he was entering a plea. He indicated, however, that he had not read it, testifying that he had trusted counsel and took him at his word. On cross-examination, the twenty-nine-year-old petitioner testified that he had completed the ninth grade and was able to read and write. He also acknowledged that he had nine prior guilty plea convictions in Dyer and Crockett Counties.

Trial counsel testified that before the petitioner entered his plea he discussed in detail with him the range of sentencing that he could receive. He said they spoke about the possibility of the petitioner's receiving some sort of alternative sentence involving treatment for his alcohol addiction, but the rehabilitation was conditioned upon the petitioner's making restitution. Although this condition was explained to the petitioner in detail, the petitioner made no effort to pay restitution, even after counsel cut his fee and urged the petitioner to apply that money toward restitution.

Trial counsel acknowledged that he made no argument to the court for an alternative sentence, instead merely stating that he would submit the issue to the court. He explained that he did so based on his many years of experience and his familiarity with the judge who presided over the sentencing hearing. As he recalled, the trial court was very upset about the petitioner's failure to make any effort toward restitution. In his opinion, the court "might very likely" have granted the petitioner's request for alternative sentencing had the petitioner followed counsel's advice about paying restitution before the sentencing hearing.

Trial counsel testified that the petitioner never tried to get in touch with him during

the time between the guilty plea and sentencing hearings. On the contrary, counsel was unable to get the petitioner to respond to him "in any form or fashion." Counsel elaborated that he repeatedly tried to call the petitioner to "admonish him about getting the restitution up that was a key to all of this," but the petitioner "never contacted [him]" and "never did anything." In addition, the petitioner, who told counsel that he had drunk alcohol every day since the age of sixteen, had been drinking on the several occasions when he came to counsel's office before the date of the guilty plea hearing.

Trial counsel further testified that he informed the petitioner about his appellate rights in the courtroom on the day he entered his plea, telling him that in his opinion there was no basis for an appeal because the judge had sentenced him to the minimum sentence, but if the petitioner was interested in appealing to let him know. He said he never heard from the petitioner.

Amanda Haynes, the petitioner's wife, testified that she and the petitioner went to trial counsel's office at least nine times a month before the sentencing hearing but were never able to see him and, although they left their name and number with his receptionist each time, counsel never called them back. On cross-examination, she acknowledged that she was separated from the petitioner during the relevant time period. She insisted, nonetheless, that she had repeatedly accompanied him to trial counsel's office.

Michelle Bryant, the petitioner's mother, testified that she had accompanied the petitioner to counsel's office three times and been present on six different occasions when the petitioner attempted to reach counsel by telephone. She said they were able to see counsel on only one of the three occasions they went to his office and that he never returned any of the telephone calls. On cross-examination, she acknowledged that the petitioner drank "[j]ust about everyday" during the period between the entry of his guilty plea and the sentencing hearing.

The petitioner, testifying in rebuttal, said that he could not recall counsel having said anything to him about his appellate rights: "I don't even remember [counsel] saying nothing. I mean, all I remember is the judge sentenced me to eight years at forty-five percent. . . . All [counsel] did was shook his head, put his head down and took me straight out the door."

At the end of the hearing, the post-conviction court issued oral findings of fact and conclusions of law, followed by a written order entered on May 10, 2010. Among other things, the court found that the petitioner's guilty plea was knowing and voluntary and that the petitioner had not shown any deficiency in counsel's performance or any prejudice to his case, other than the fact that no direct appeal of his sentence was filed. Accordingly, the court denied the petition for post-conviction relief from the conviction but granted the

petitioner's request for a delayed appeal of his sentence.

## ANALYSIS

The petitioner argues on appeal that the post-conviction court erred by limiting its relief to the granting of a delayed appeal rather than setting aside the plea in its entirety and remanding for a new trial. The State argues that the denial of post-conviction relief from the conviction should be affirmed and the matter remanded for the post-conviction court to make appropriate findings as to whether a delayed appeal of the sentence is warranted in the interest of justice.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome,"that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, in Mackey, our supreme court required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

We conclude that the record fully supports the findings and conclusions of the post-conviction court that the petitioner received effective assistance of counsel and that his guilty

plea was knowing, intelligent, and voluntary. The petitioner, who acknowledged at the evidentiary hearing that he could read and write and had signed the guilty plea agreement, affirmed at the guilty plea hearing that he understood each of the constitutional rights he was waiving, that counsel had reviewed with him the range of punishment he faced, that he was satisfied with counsel's representation, that he was submitting his case to the court to determine his sentencing, and that he realized that, although there had been some discussion about the possibility of a sentence involving rehabilitation, there was no promise that he would receive that type of sentence. The petitioner also affirmed that he understood that by pleading guilty he was waiving his right to appeal his conviction with respect to the issue of his guilt or innocence, but that he would "still have the right to appeal the sentence if [he] fe[lt] that the sentence [was] unfair."

Moreover, trial counsel's testimony at the evidentiary hearing, which was specifically accredited by the post-conviction court, established that he discussed the plea agreement with the petitioner in detail, including the range of punishment the petitioner faced and the fact that the prosecutor's recommendation of a sentence involving rehabilitation was conditioned upon the petitioner's paying restitution. Counsel's testimony also established that he informed the petitioner of his right to appeal the sentence, although he advised him that he thought he would be unsuccessful. We, therefore, affirm the portion of the post-conviction court's order denying the petitioner post-conviction relief from the conviction.

We, however, reverse the portion of the post-conviction court's order granting the petitioner a delayed appeal of the sentence. Tennessee's Post-Conviction Procedure Act provides that when a trial judge finds that the petitioner was denied the right to an appeal from the original conviction in violation of the United States or Tennessee Constitution, and there is an adequate record of the original trial proceeding available for review, the trial judge can grant a delayed appeal. Tenn. Code Ann. § 40-30-113(a)(1) (2006). A defendant may receive a delayed appeal where there has been a denial of the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. Wallace v. State, 121 S.W.3d 652, 656 (Tenn. 2003). In determining whether a defendant has been denied effective assistance of counsel, courts apply the two-pronged deficiency and prejudice test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).

In its brief, the State characterizes the post-conviction court's granting of a delayed appeal as a "judicial afterthought," which was not supported by appropriate findings of the court. We agree. After the post-conviction court issued its oral ruling, in which it found that the guilty plea was knowing and voluntary, counsel was not deficient in his representation, and the petitioner had suffered no prejudice, the petitioner asked the court to rule on his request for a delayed appeal. The post-conviction court responded that it "had no problem

with that." When reminded by the attorney general that it needed to make findings in support of the grant of a delayed appeal, the court responded:

> [Trial counsel] says that he discussed that issue with him and possibly he should have discussed that issue further with him, but so if it's necessary to have that finding, the Court will make a finding that there should have been some further discussion about the appeal.

In the written order that followed, the post-conviction court found that the petitioner failed "to carry his burden in showing deficient performance by [trial counsel] . . . and failed to further show any prejudice . . . other than that no appeal was sought as to the sentence."

This court has previously held that "before post-conviction relief in the form of a delayed appeal or any other type of relief can be granted to a petitioner, he must show not only that his counsel performed deficiently, but also that the deficiency resulted in prejudice to him." Terry Smithson v. State, No. 88-203-III, 1989 WL 28311, at *3 (Tenn. Crim. App Mar. 28, 1989) (citing Strickland 466 U.S. at 700). The post-conviction court's oral findings that counsel "possibly" should have discussed the petitioner's appellate rights further with him and that "there should have been some further discussion about the appeal," while arguably constituting a finding that counsel was deficient in this respect, contradicts its written order finding that counsel was not deficient in his performance. Moreover, the record does not support a finding of either deficiency in counsel's performance or resulting prejudice with respect to this claim. Trial counsel testified that he informed the petitioner he had a right to appeal the sentence and told him to contact him if he wished to do so, but he never heard from the petitioner. We note that the trial court also informed the petitioner of his right to appeal the sentencing determinations at the time it accepted his guilty plea. In addition, the post-conviction court, which had presided over the sentencing hearing, observed that the court rarely sentenced Range III offenders to alternative sentencing and that the petitioner, in its opinion, was fortunate to have received the minimum sentence in the range. We, therefore, conclude that the petitioner has not shown that he was denied his right to file a direct appeal of his sentence.

## CONCLUSION

Based on our review, we affirm the denial of post-conviction relief but reverse the granting of a delayed appeal.

_____
ALAN E. GLENN, JUDGE